IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES GOODMAN, | ) | |
| #168712, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-CV-381-WHA |
| | ) | [WO] |
| RICHARD ALLEN; GWENDOLYN | ) | |
| MOSLEY; LEWIS BOYD; | ) | |
| KENNETH SCONYERS; | ) | |
| GWENDOLYN BABERS; | ) | |
| ANTHONY ASKEW, and | ) | |
| STEVEN WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by James Goodman ["Goodman"], an indigent state inmate previously incarcerated at the Easterling Correctional Facility ["Easterling"], and currently incarcerated at Ventress Correctional Facility.  Goodman makes the following claims in his complaint:

(1) defendants allow anyone on the "approved list" to be on the Native American sacred grounds, knowing that some White gang members on the list desecrate the sacred grounds, and defendants refuse to take corrective action;

(2) defendants break the ceremonial circle on Native American grounds to accommodate officers moving segregation inmates;

(3) defendants refuse to allow tobacco for ceremonial purposes or transfer Native American inmates to institutions that allow tobacco;

(4) defendants limit access to firewood and limit fires to three days a week while other institutions have fires daily;

(5) defendants refuse to allow Native American inmates to use tobacco in the ceremonial pipe;

(6) defendants prevent Native Americans from using the sweat lodge because it is 100 yards from the ceremonial grounds, the size of the area is incorrect, tobacco is prohibited, and Goodman is not allowed to transfer to an institution with a functioning sweat lodge; and

(7) defendant Chaplain Askew desecrated Goodman's ceremonial items, sacred boxes, or bundles upon entry to Easterling by touching them and, when asked to stop said, "I can do this I'm a holy man," then laughed derisively.

*Doc. No. 1*, at 2-5.  Goodman complains defendants' actions violated his rights under the First Amendment, Eighth Amendment, Fourteenth Amendment, Alabama Constitution, and Alabama Department of Corrections ["ADOC"] Policy No. 333.  *Id.* Goodman names as defendants former Commissioner of the ADOC Richard Allen; Wardens Gwendolyn Mosley, Lewis Boyd, and Kenneth Sconyers; Correctional Captain Gwendolyn Babers; and Chaplains Anthony Askew and Steven Walker.  Goodman seeks injunctive relief and monetary damages for the alleged violations.[1]  *Doc. No. 1*, at 6.

The defendants filed an answer, special report, and supporting evidentiary materials addressing Goodman's claims for relief.  *Doc. Nos. 18, 19.*  Defendants argue: (1) Goodman's complaint fails to allege a short and plain statement of what each defendant did

---

[1]Specifically, Goodman asks for removal of the "sweat lodge" designation at Easterling, court costs, and $5,000 from each defendant "for gross negligence due to personal bias and extreme prejudice."  *Doc. No. 1*, at 6.

2

that entitles Goodman to relief, (2) Goodman fails to allege in what capacity he sues each

defendant, (3) the complaint fails to state a claim upon which relief may be granted, (4) this

court does not have jurisdiction to order the injunctive relief requested, (5) defendants are

entitled to sovereign or qualified immunity, and (6) Goodman failed to exhaust his

administrative remedies before filing suit or show how he has been injured. *Doc. No. 18*, at

5-13.

## II.  FAILURE TO RESPOND TO COURT ORDERS

The court informed Goodman that the defendants' special report may, at any time, be

treated as a dispositive motion and explained to Goodman the proper manner in which to

respond to a motion for summary judgment.  The court warned Goodman:

> If the plaintiff fails to file a response as required by this order, the court will
> treat the plaintiff's failure to respond as an abandonment of the claims set forth
> in the complaint and as a failure to prosecute this action. Moreover, the
> plaintiff is specifically cautioned that if he fails to file a response in
> compliance with the directives of this order the undersigned will recommend
> that this case be dismissed for such failure. In addition, if the plaintiff fails to
> respond to the written report with respect to each of the claims raised in his
> complaint, the court will treat this failure as an abandonment of these claims
> and shall proceed as justice requires.

*Doc. No. 20*, at 1.  When Goodman did not respond, the court ordered Goodman to show

cause why the case should not be dismissed for his failure to comply with the orders of the

court and his failure to adequately prosecute this action.  *Doc. No. 23.*

Goodman responded by providing the court his new address, but he did not respond

to defendants' special report as directed in the court's order to respond.  *Doc. No. 25.*

3

Goodman's case is therefore due to be dismissed for his abandonment of the claims raised in his complaint and for his failure to prosecute this action adequately.

### III.   MOTION TO DISMISS

If Goodman's case is not dismissed for lack of prosecution, the court alternatively recommends that this case be dismissed based on Goodman's failure to exhaust available administrative remedies before filing suit.   In their special report, defendants assert the complaint is due to be dismissed because Goodman failed to exhaust an administrative remedy available to him through the prison's Administrative Regulation 313 ["AR 313"], prior to initiation of this case.   *Doc. No. 18*, at 12-13; *Doc. 18-5*, at 3 (Summers Aff.). Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat defendants' report as a motion to dismiss.   *Doc. No. 18*; *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) ("[A]n exhaustion defense--as in [this] case--is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'") (citations omitted).   Thus, this case is now pending on defendants' unresisted motion to dismiss.   Upon consideration of the motion and the evidentiary materials filed in support thereof, the court concludes that defendants' motion to dismiss is due to be granted.

### A.  Standard of Review

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the

plaintiff's version of the facts as true.  'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant*, 530 F.3d at 1373-74).  If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376)."  *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012). Defendants bear the burden of proof during this second step.  *Turner*, 541 F.3d at 1082.

## B.  Discussion

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Exhaustion of all available

5

administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Woodford*, 548 U.S. at 93 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90-91, 93. The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot  "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id.* at 83-84; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."  *Smith v. Terry*, 491 F. App'x 81, 83 (11th

6

Cir. 2012) (per curiam).  Even where an inmate litigant "attempt[s] to amend or supplement

his original complaint" regarding efforts at subsequent exhaustion, it does "not change the

important historical fact: his administrative remedies were unexhausted when he filed his

original complaint. Therefore, he cannot cure the exhaustion defect." *Id.*

   Goodman challenges his treatment regarding his religious beliefs while incarcerated

at Easterling.  It is undisputed that the prison provides a means for inmates to make requests

for religious assistance under AR 313 ¶ III(B), which provides, in relevant part, that "[a]n

inmate . . . whose religious needs cannot be met . . . may submit a written request to the

Chaplain . . . for assistance. . . ."  *Doc. No. 18-3*, at 7.  In addition, there is no dispute that the

prison provides a means to resolve disputes regarding religion.  AR 313 ¶ III(L) provides,

in relevant part:

> Matters of a religious nature, such as legitimacy of a purported religious
> activity or object/symbol and eligibility under religious law or custom for an
> inmate to participate in a particular religious activity, shall be resolved by the
> Chaplain and/or a designated employee whenever possible.   When the
> Chaplain is unable to resolve a religious dispute, inmates shall use the inmate
> grievance procedure for resolution of disputes regarding approval or restriction
> on religious practices or articles.  Use of the inmate grievance procedure is the
> complete and exclusive right created or intended to be created by this
> administrative regulation, and no constitutional protected property, privacy,
> freedom of religion, freedom of speech or other interests are intended to be
> created, either expressed or implied, by this administrative regulation.

*Doc. No. 18-3*, at 11-12.  Defendants assert that Goodman has not sought relief under AR

313.  *Doc. No. 18*, at 13; *Doc. No. 18-5*, at 2 (Summers Affidavit).

   The court granted Goodman two opportunities to respond to defendants' exhaustion

defense. *Doc. Nos. 20, 23.*  Goodman did not object to defendants' version of the facts, he provides no specific facts concerning exhaustion of administrative remedies, and the court accepts the facts as true.  Under the undisputed facts, Goodman did not exhaust his available administrative remedies before filing suit.  *See Turner*, 541 F.3d at 1082.  Consequently, the court is not required to proceed to the second step under *Turner* to resolve any factual disputes between the parties regarding exhaustion, and defendants are entitled to have the complaint dismissed for failure to exhaust available administrative remedies.[2]  *See id.* at

---

[2]Even if the court were to consider the merits of Goodman's claims, defendants would be entitled to summary judgment on them.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  To the extent that Goodman sues the defendants in their official capacities, they are immune from monetary damages. *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity). The court further takes judicial notice that the court previously addressed and rejected nearly identical claims by Native American inmates at Easterling regarding tobacco use, interruption of ceremonies, timing of fires, and the sweat lodge.  *See Adams v. Mosley*, No. 2:05-cv-352-MHT, 2008 WL 4369246, at *1, 4-5, 8-13 (M.D. Ala. Sept. 25, 2008) (adopting recommendation by the Honorable Charles S. Coody); *see also Coleman v. Allen*, 2:09-cv-311-TMH, 2012 WL 4350945 (M.D. Ala. Sept. 24, 2012) (adopting recommendation by the Honorable Susan Russ Walker, 2012 WL 4378086 (M.D. Ala. Sept. 7, 2012).  As for the claim that white gangs are allowed on ceremonial grounds, the undisputed record is that any gang activity would be defused, and inmates who are not approved to be on the Native American grounds would be dispersed and appropriately disciplined.  *Doc. No. 18-5*, at 3 (Summers Affidavit); *Doc. No. 18-6*, at 1 (Hetzel Affidavit).  Finally, given the early dismissal of all of Goodman's federal claims, in the interest of judicial economy, convenience, fairness, and comity the court should decline to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,[] the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice") (footnote omitted).

1083.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The Motion to Dismiss be GRANTED in favor of the defendants;

2.  This case be DISMISSED without prejudice; and

3.  No costs be taxed herein.

It is further

ORDERED that on or before September 17, 2014 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting pre-October 1, 1981, opinions of the Fifth Circuit as binding

precedent).

Done this 2nd day of September, 2014.


        /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE